**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

PROTECT OUR LAND AND RIGHTS
DEFENSE FUND,

       Plaintiff,

v.                                                                                Case No. 12-14161

ENBRIDGE ENERGY, LIMITED
PARTNERSHIP,

       Defendant.

_____/

**OPINION AND ORDER REMANDING TO STATE COURT**

Plaintiff, "Protect Our Land And Rights Defense Fund" ("POLAR"), is a non-profit

Michigan corporation self-described as involved in environmental protection, and here

seeks to enjoin Defendant Enbridge Energy, Limited Partnership ("Enbridge"), from

performing construction on an oil pipeline that runs through various Michigan counties.

POLAR alleges that Enbridge has created a public nuisance by failing to obtain state

and local consents prior to commencing construction as required by Michigan

constitutional and statutory provisions.  Enbridge moves to dismiss POLAR's claim

under Rule 12(b)(6) arguing that POLAR does not have prudential standing and fails to

state a claim for relief.

The motion has been fully briefed, and a hearing was held on November 7, 2012.

*See* E.D. Mich. LR 7.1(f)(2).  For the following reasons, the court will deny the motion

without prejudice and remand the case to state court.

## I.  BACKGROUND

Enbridge owns and operates an interstate crude oil and petroleum pipeline known as Line 6B that commences in Griffith, Indiana, runs through various Michigan counties, and terminates in Sarnia, Ontario.  Enbridge is undertaking projects to replace segments of Line 6B in Michigan and has filed three applications with the Michigan Public Service Commission ("MPSC"), MPSC Case No. U-16838, U-16856, and U-17020, respectively, for approval of the projects.

POLAR is a non-profit Michigan corporation whose stated purpose is "to protect natural resources, seek to promote environmentally sound values, and seek to protect landowners' private property rights from excessive or improper use of eminent domain." (Pl.'s Compl. ¶ 1, Dkt. # 1-1.)  Its members (the "Members") are Michigan landowners who own real property that is situated on or immediately adjacent to the land through which Line 6B runs.  POLAR claims that for MPSC No. U-17020, Enbridge has not obtained the necessary state and local environmental permits, nor the consent of the counties through which Line 6B runs, to permit construction.  Under article 7, section 29 of the Michigan Constitution, no corporation has the right to use any highway, street, or public place of a county for pipes without that county's consent.  Mich. Const. art. 7, § 29.  Michigan Compiled Laws § 247.183(1) states that a company may not commence construction of a pipeline without the consent of the municipality through which the pipeline runs.  Mich. Comp. Laws § 247.183(1).

POLAR filed suit in the Sixth Judicial Circuit Court, County of Oakland, Michigan, asserting that Enbridge's initiation of construction without obtaining the necessary approvals constitutes a public nuisance.  POLAR seeks to enjoin the construction as it

2

may cause "potential damage" to its Members' property, their "family's health and safety, as well as construction, traffic, noise and other disruption of the community." (Pl.'s Mot. Prelim. Inj. Ex. B, Dkt. # 4-3.)  Enbridge timely removed the case to this court, after which POLAR filed a motion for preliminary injunction to restrain the construction.

Before the preliminary injunction hearing could be held, Enbridge moved to dismiss under Rule 12(b)(6) arguing that POLAR lacked prudential standing to bring a public nuisance claim under the Michigan laws and that POLAR failed to state a claim for relief.  The court expressed to the parties that the threshold issue of standing should be determined before any decision on the merits, and therefore stayed any consideration of injunctive relief.

## II.  STANDARD

A complaint may be dismissed under Rule 12(b)(6) when the plaintiff fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  A complaint "does not need detailed factual allegations," but "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The "factual allegations must be enough to raise a right to relief above the speculative level."  *Id.*  The plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face."  *Id.* at 570.

When ruling on a motion to dismiss pursuant to Rule 12(b)(6), the court must construe the complaint in a light most favorable to the plaintiff and accept all of the factual allegations as true.  *Evans-Marshall v. Bd. of Educ.,* 428 F.3d 223, 228 (6th Cir. 2005).  In doing so, the court must "draw all reasonable inferences in favor of the

3

plaintiff." *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).  Yet the court

"need not accept as true legal conclusions or unwarranted factual inferences." *Gregory*

*v. Shelby Cnty., Tenn.*, 220 F.3d 433, 466 (6th Cir. 2000).  A court cannot grant a

motion to dismiss under Rule 12(b)(6) based upon its disbelief of a complaint's factual

allegations.  *Wright v. MetroHealth Med. Ctr.*, 58 F.3d 1130, 1138 (6th Cir. 1995).

"[T]he court primarily considers the allegations in the complaint, although matters of

public record, orders, items appearing in the record of the case, and exhibits attached to

the complaint also may be taken into account."  *Amini v. Oberlin College*, 259 F.3d 493,

502 (6th Cir. 2001).

### III.  DISCUSSION

Enbridge argues that POLAR's complaint should be dismissed under Rule

12(b)(6) for lack of prudential standing and failure to state a claim.

### A.  Prudential Standing

Federal courts sitting in diversity apply the federal standard to determine

prudential standing.  *See Wuliger v. Mfrs. Life Ins. Co.*, 567 F.3d 787, 793 (6th Cir.

2009).  A plaintiff must satisfy three prudential standing requirements:

> (1) a plaintiff must assert his own legal rights and interests, without resting
> the claim on the rights or interests of third parties; (2) the claim must not be
> a "generalized grievance" shared by a large class of citizens; and (3) in
> statutory cases, the plaintiff's claim must fall within the "zone of interests"
> regulated by the statute in question.

*Id.*

Enbridge argues that POLAR fails to satisfy the first requirement.  POLAR seeks

to assert rights on behalf of its Members under article 7, section 29 of the Michigan

Constitution and Michigan Compiled Laws § 247.183(1).  Article 7, section 29 of the

Michigan Constitution states, "No . . . corporation, public or private, operating a public utility shall have the right to the use of the highways, streets, alleys or other public places of any county, township, city or village for . . . pipes . . . without the consent of the duly constituted authority of the county, township, city or village . . . ." Mich. Const. art. 7, § 29. Michigan Compiled Laws § 247.183(1) reads:

> [M]unicipalities may enter upon, construct, and maintain . . . pipe lines . . . upon, over, across, or under any public road, bridge, street, or public place, including, longitudinally within limited access highway rights-of-way, and across or under any of the waters in this state, with all necessary erections and fixtures for that purpose. A . . . municipality, before any of this work is commenced, shall first obtain the consent of the governing body of the city, village, or township through or along which these lines and poles are to be constructed and maintained.

Mich. Comp. Laws § 247.183(1). Enbridge claims that these rights belong only to municipalities and do not convey any rights to individuals residing in those municipalities, thereby precluding POLAR from bringing a public nuisance claim under the laws.

In *Indian Village Association v. Shreve*, a residential homeowners association and individual homeowners brought a public nuisance action against the defendants for violating both a zoning ordinance and a restrictive covenant. 216 N.W.2d 447 (Mich. Ct. App. 1974). The enforcement section of the zoning ordinance stated that "[t]he Department of Buildings and Safety Engineering, through its officers, inspectors, or employees, shall enforce the provisions of this ordinance." *Id.* at 449. The defendants argued that the plaintiffs could not properly bring a public nuisance action based upon the ordinance because only the public officials listed in the ordinance could "enforce" it. *Id.* The trial court disagreed, relying upon the ordinance as a basis upon which the

5

plaintiffs could argue that a public nuisance existed, which plaintiffs could properly move

to abate; with this analysis the court of appeals agreed:

> [P]laintiffs are not attempting to usurp the function of the designated officials
> to enforce the zoning ordinance, but rather plaintiffs are merely seeking to
> enjoin defendants from using their property in such a manner as to constitute
> a public nuisance.  Defendants' violation of the zoning ordinance is thus
> relevant only insofar as the failure to comply with the ordinance gives rise to
> a public nuisance.

*Id.*

Similarly here, Michigan laws are relevant to the extent that Enbridge's (alleged)

violation of such laws may give rise to a public nuisance claim.  POLAR is not,

therefore, to be viewed as attempting to usurp the authority of various Michigan

municipalities as the enforcers of the laws, but instead, is seen attempting only to enjoin

Enbridge from engaging in construction to the extent that it constitutes a public nuisance

from the effects of which POLAR's Members allegedly suffer.

A public nuisance is "an unreasonable interference with a common right enjoyed

by the general public."  *Capitol Properties Grp., LLC v. 1247 Ctr. St., LLC*, 770 N.W.2d

105, 110 (Mich. Ct. App. 2009).  "Unreasonable interference" is conduct that "(1)

significantly interferes with the public's health, safety, peace, comfort, or convenience,

(2) is proscribed by law, or (3) is known or should have been known by the actor to be

of a continuing nature that produces a permanent or long-lasting, significant effect on

these rights."  *Id.*  Generally, "a public nuisance gives no right of action to an individual

and must be abated by the appropriate public officer."  *Towne v. Harr*, 460 N.W.2d 596,

597 (Mich. Ct. App. 1990).  However, a private individual "may file an action for a public

nuisance against an actor where the individual can show he suffered a type of harm

6

different from that of the general public." *Capitol Properties*, 770 N.W.2d at 110. A private citizen who brings a public nuisance claim arising under the violation of a statute must carry the burden of proving that the special damages "result[] from" the violation of the statute. *Towne*, 460 N.W.2d at 598.

POLAR alleges three kinds of harm that its Members will incur from Enbridge's violations of the Michigan laws: (1) breach of the peace; (2) "potential construction, traffic, noise and other disruptions of the community," (Pl.'s Mot. Prelim. Inj. Ex. B, Dkt. # 4-3); and (3) damage to the Members' real property. It is unnecessary to decide whether the first two types of injuries constitute special damages as neither arise from the violation of the Michigan laws. The Michigan laws require Enbridge to obtain various municipal consents and state and local permits before beginning construction. But, as POLAR acknowledges, if Enbridge secures all such consents and permits, the construction would be lawful. (*See* Pl.'s Compl. ¶ 14, Dkt. # 1-1.) POLAR's Members will endure the same "construction, traffic, noise, and other disruptions" and "breach of the peace" regardless of whether the consents are obtained. These injures, therefore, do not constitute special damages resulting from any violation of the Michigan laws.

As real property is unique, *In re Smith Trust*, 745 N.W.2d 754, 759 (Mich. 2008), any construction that harms the Members' property would constitute special damages. POLAR offers "[t]he destruction of trees" and "the digging up of landscape," (Pl.'s Resp. Def.'s Mot. Dismiss at 13, Dkt. # 31), as examples of the types of harm Enbridge's construction will cause to its Members' property. But in order to qualify as special damages for the purpose of a public nuisance, the harm to the Members' property must

"result[] from" Enbridge's violation of the Michigan laws.  *Towne*, 460 N.W.2d at 598.

The Michigan laws do not ban, or even refer to, such harm; Enbridge can engage in

construction that affects property in this manner if it obtains the necessary consents.

POLAR argues that its Members' property will be damaged if Enbridge begins

construction without securing the required environmental permits.  For example,

Enbridge allegedly has not yet obtained the Soil Erosion and Sedimentation Control

Permit from the Berrien County Drain Commissioner.  (Pl.'s Compl. ¶ 19, Dkt. # 1-1.)

POLAR argues that if Enbridge begins construction without obtaining that permit, it will

harm the soil on its Members' property, thereby causing special damages.  This

argument assumes that Enbridge will damage the Members' soil only if it fails to obtain

the permit.  Yet such an outcome is neither guaranteed, nor does it logically follow:

Enbridge may either meet or violate Berrien County's safety standards for soil erosion

whether it obtains the permit or does not.  POLAR, in this example, has not offered any

evidence to show that its Members' land located in Berrien County will be harmed

"resulting from" Enbridge's failure to secure a permit. *Towne*, 460 N.W.2d at 598.

This case is distinguishable from *Indian Village Association v. Shreve*, in which

the plaintiffs sought to enjoin the defendants from renting out some of their many extra

bedrooms in violation of a zoning ordinance.  216 N.W.2d 447, 448 (Mich. Ct. App.

1974).  The zoning ordinance restricted the use of property in the area in which the

home was located to single family residences.  *Id.*  The alleged harm, therefore, arose

quite directly from the violation of the ordinance.  *Id.* at 449.

Unlike *Indian Village*, Enbridge's alleged violation of the Michigan laws does not

directly cause harm to the Members' property.  POLAR alleges no more than general

8

statements of what damage may be caused.  POLAR claims that Enbridge will "dig up and destroy numerous areas of the Counties and unique real property belonging to Members."  (Pl.'s Compl. ¶ 45, Dkt. # 1-1.)  The Members' form affidavits maintain that they will suffer "potential damage to my Property and/or the Watershed and potential damage to my and/or my family's health and safety."  (Pl.'s Mot. Prelim. Inj. Ex. B, Dkt. # 4-3.)  These general (and boilerplate) declarations fail to allege facts that show which environmental permits will be violated, how such violation will result in harm to the Members' property, or the likelihood that such harm will occur.  POLAR has not met its burden of alleging that its Members will suffer special damages as a direct result of Enbridge violating the Michigan laws.  Therefore, POLAR does not have prudential standing to bring its public nuisance claim.  *See Towne v. Harr*, 460 N.W.2d 596, 598 (Mich. Ct. App. 1990) (plaintiffs did not have standing to bring a public nuisance suit under zoning ordinance because they "failed to prove special damages resulting from the [defendants'] violation of the [statute]").

### B.  Remand

Having found that POLAR lacks prudential standing, it is unnecessary to consider whether POLAR stated a claim for relief.  Instead, the court must decide whether to remand the case to state court or dismiss under Rule 12(b)(6).  A federal court has no subject matter jurisdiction over a case where a plaintiff lacks constitutional standing. *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 496 (6th Cir. 1999).  In addition to constitutional standing, prudential standing limits the subject matter jurisdiction of the courts in the Sixth Circuit.  *Cmty. First Bank v. Nat'l Credit Union Admin.*, 41 F.3d 1050, 1053 (6th Cir. 1994) ("[Prudential standing] is a qualifying hurdle that plaintiffs must

satisfy even if raised *sua sponte* by the court. We find no authority for the plaintiffs' argument that prudential standing requirements may be waived by the parties."). In a removed action, if a plaintiff lacks standing, the court "lacks subject matter jurisdiction and [the] action must be remanded to the state court from which it was removed." *Coyne*, 183 F.3d at 496 (citing 28 U.S.C. § 1447(c) (stating that "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded")). "[I]n a removed action, upon determination that a federal court lacks jurisdiction, remand to state court is mandatory even if it appears that remand would be futile." *Coyne*, 183 F.3d at 496–97.

POLAR's lack of prudential standing deprives the court of subject matter jurisdiction and requires that the action be remanded to state court pursuant to 28 U.S.C. § 1447(c).

## IV. CONCLUSION

Accordingly, Defendant's motion to dismiss [Dkt. # 12] is DENIED WITHOUT PREJUDICE. The case is REMANDED to the Sixth Judicial Circuit Court, County of Oakland, Michigan. All other pending motions are TERMINATED WITHOUT PREJUDICE.

          s/Robert H. Cleland
          ROBERT H. CLELAND
          UNITED STATES DISTRICT JUDGE

Dated: November 27, 2012

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, November 27, 2012, by electronic and/or ordinary mail.

 s/Lisa Wagner
Case Manager and Deputy Clerk
(313) 234-5522